UNITED STATES DISTRICT COURT
FOR THE STATE OF CONNECTICUT

FILED

Eric Michael Sorenson          2016 DEC 12  PM 3 34
          Plaintiff, Pro Se

Vs.                            U.S. DISTRICT COURT
                               NEW HAVEN, CT.

MBI, Inc., The Danbury Mint, John P. Hobar, CEO or other comparable title(s) of MBI, Inc. (Doe No. 1), CEO or other comparable title(s) of The Danbury Mint (Doe No. 2), Employees, subsidiaries, departments, etc... of MBI, Inc. whom sent dunning letters dated October 19, 2016 (Doe No. 3); Employees, subsidiaries, departments, etc... whom sent bills to the Plaintiff in regards to services allegedly received from The Danbury Mint (Doe No. 4), Any other John/Jane Does whose true names are not presently known, Plaintiff sues each and all defendants in both their individual and official capacities,
          Defendants.

**Pro Se Verified Complaint**

D.C. No. 3:16Cv2029(SRU)

Hon. _____

Mag. _____

## Pro Se Verified Complaint

### I. INTRODUCTION.

1. The Plaintiff comes now before this Court and files this Complaint *pro se* against Defendants, in their individual and official capacity, for violations of Plaintiff's constitutional, statutory and common law rights to (1) the use of proper and fair debt collection practices, (2) proper due process to the Plaintiff of both procedural and substantive nature, and (3) a response to a challenge to a bill allegedly due.

### II. NATURE OF ACTION.

2. Plaintiff brings this action *pro se* alleging violations of his constitutional, statutory, and common law rights. Specifically, Plaintiff alleges that the Defendants, in their official capacity and where applicable, in their individual capacity, have among other things:

   a. Failed in their duties to respond to the Plaintiff to correct billing disputes in violation of the Substantive and Procedural Due Process Clauses of the Fourteenth Amendment of the United States Constitution, Art. I § 7 of the Minnesota Constitution, Fair Credit Billing Act (15 U.S.C. §§ 1666 – 1666f), Negligence, Intentional Infliction Of Emotional Distress, Negligent Infliction Of Emotional Distress, and the prohibited acts of credit collection agencies listed within Minn. Stat. § 332.37(1)-(21).

   b. Utilized unfair debt collection procedures in the collection of a debt in violation of the Substantive and Procedural Due Process Clauses of the Fourteenth Amendment of the United States Constitution, Art. I § 7 of the Minnesota Constitution, Fair Debt Collection Practices Act (15 U.S.C. §§ 1692 – 1692p), Negligence, Intentional Infliction Of Emotional Distress, Negligent Infliction Of Emotional Distress, and the prohibited acts of credit collection agencies listed within Minn. Stat. § 332.37(1)-(21).

3. Plaintiff seeks injunctive relief for these constitutional, statutory, and common law violations. Plaintiff also seeks actual or nominal damages based on the Defendants' actions in their individual capacity to violate Plaintiff's constitutional, statutory, and common law rights.

### III. STATEMENTS OF JURISDICTION AND VENUE.

4. This Court has Federal Question jurisdiction over this Action pursuant to 28 U.S.C. § 1331 in that this Action arises under the Constitution, laws, or treaties of the United States.

5. This Court has Supplemental Jurisdiction over this Action pursuant to 28 U.S.C. § 1367 in that this Action involves issues of state common and statutory laws.

6. This Court has Diversity Jurisdiction over this Action pursuant to 28 U.S.C. § 1332 in that this Action, as specifically explained infra, is expected to involve an amount in controversy that exceeds $75,000.00, and none of the Parties in this Action are from the same State.

7. The Sixth Circuit U.S. District Court for the State of ~~Michigan~~ Connecticut is a proper venue to for this Action as one or more of the Defendants live, work, and/or reside within the jurisdiction of this Court being ~~Wixom, Michigan~~ New Haven, Connecticut. In addition, the majority of the acts or omissions of this Complaint has occurred within the borders of ~~Michigan~~ Connecticut.

## IV. PARTIES.

8. Plaintiff, Eric Michael Sorenson, is a civil commitment detainee and located in the care and custody of the State of Minnesota. The Plaintiff is located specifically at 1111 Highway 73, Moose Lake, Minnesota 55767. The Plaintiff has been the subject of unfair debt collections and unfair billing procedures at the hands of the Defendants as specifically stated infra. The Plaintiff currently plausibly will seek over $75,000.00 in compensation and is not located within the same state as Defendants in their entirety. Plaintiff was injured by the specific acts and omissions in this Complaint within the State of Minnesota.

9. Defendant, MBI, Inc. (hereinafter, "MBI"), is a private collection agency that was hired as a third party debt collector to recover alleged fees owed to Defendant The Danbury Mint. Defendant MBI, as stated specifically infra, is alleged to have utilized unfair debt collection procedures to collect alleged monies owed to the Plaintiff. MBI can be served at 47 Richards Avenue, Norwalk, CT 06857.

10. Defendant The Danbury Mint (hereinafter "DM"), is a private merchant and provides merchandise (jewelry, etc...) to customers at a fee. Danbury Mint sends bills to customers through the U.S. Mail on a regular basis. Danbury Mint failed to respond to two challenge letters sent to them in regards to the

alleged owed bill as specifically stated infra. Danbury Mint can be served at 47 Richards Avenue, Norwalk, CT 06857.

11. Defendant Jon P. Hobar ("Hobar"), is the Manager of the Credit And Collections for Danbury Mint. Upon information and belief Hobar's official duties is to oversee MBI's collection attempts to Plaintiff's alleged bill owed to Danbury Mint. Hobar is statutorily classified as a "Debt Collector" under the Fair Debt Collection Practices Act ("FDCPA"). Hobar can be served at 47 Richards Avenue, Norwalk, CT 06857.

12. Defendant CEO or other comparable title(s) of MBI, Inc. (hereinafter, "Doe No. 1"). It is unknown as to the whereabouts or job duties of this Defendant. Thus, the Plaintiff will likely discovery information of this respective nature during the discovery process.

13. Defendant CEO or other comparable title(s) of The Danbury Mint (hereinafter, "Doe No. 2"). It is unknown as to the whereabouts or job duties of this Defendant. Thus, the Plaintiff will likely discovery information of this respective nature during the discovery process.

14. Defendant Employees, subsidiaries, departments, etc... of MBI, Inc. whom sent dunning letters dated October 19, 2016 (hereinafter, "Doe No. 3"). Discovery process will likely unveil more detailed information in regards to the instant Complaint.

15. Defendant Employees, subsidiaries, departments, etc... whom sent bills to the Plaintiff in regards to services allegedly received from The Danbury Mint (hereinafter, "Doe No. 4"). Discovery process will likely unveil more detailed information in regards to the instant Complaint.

16. Any other John/Jane Does whose true names are not presently known.

17. Plaintiff sues each and all defendants in both their individual and official capacities.

18. All Defendants have acted and continue to act under the Color of Law during all of the specific acts and omissions of this Complaint.

## V. FACTUAL ALLEGATIONS.

A. History With Plaintiff And Defendant DM.

19. In or about 2016, Defendants DM, Doe's No. 2 and 4 had sent Plaintiff a general advertising ad for a men's ring Defendants DM, Doe's No. 2 and 4 titled "Black Onyx". Plaintiff played for the ring in full and Defendants sent Plaintiff the ring.

20. Plaintiff received the ring. A short time later Defendants DM, and Doe's No. 2 and 4 started billing Plaintiff for the ring at issue.

21. A short time later, Defendants DM, and Doe's No. 2 and 4 employed Defendants MBI, Hobar, and Doe's No. 1 and 3 to collect the alleged bills from Plaintiff.

22. Based upon Defendant's DM, Doe's No. 1-4, Hobar, and MBI extreme and outrageous conduct as explained specifically herein, it is the sole reason for the specific injuries, including but not limited to severe emotional distress, to Plaintiff. Defendants DM, Doe's No. 1-4, Hobar, and MBI should have reasonably known that Plaintiff would suffer emotional distress.

B. Unfair Billing Practices.

23. The Fair Billing Collections Act ("FBCA") provides that Plaintiff has a right to challenge a bill and that a creditor must respond to acknowledge receipt of the letter within 30 days and notify the debtor of the final outcome of the dispute within 90 days after receipt of the respective letter.

24. Prior to receipt of the October 19, 2016 "dunning" letter, Plaintiff wrote Defendants DM, and Doe's No. 2 and 4 a letter challenging the bills received by Defendants DM, and Doe's No. 2 and 4.

25. The challenge letter stated that, in Plaintiff's belief, he did not owe any funds to Defendants DM, and Doe's No. 2 and 4 and that the funds had already been paid in full. Plaintiff also placed his account number for his order for DM and gave Defendants DM, and Doe's No. 2 and 4 Plaintiff's full name so that he could be easily identified as the person holding the account.

Additionally, Plaintiff indicated that the mistake was that Plaintiff had paid his account in full and should not be getting billed.

26. From the time of the first communication with creditors Defendants DM, and Doe's No. 2 and 4, Plaintiff never received a response to the letter challenging the billing of Defendants DM, and Doe's No. 2 and 4.

27. Plaintiff again wrote Defendants DM, and Doe's No. 2 and 4 another letter challenging their billing of Plaintiff and it contained the similar substance as the first letter of Plaintiff challenging the billing of Plaintiff by Defendants DM, Doe's No. 2 and 4.

28. Again, it has been way over 30 days and Plaintiff has never heard back from Defendants DM, Doe's No. 2 and 4 on any challenge letter to Defendants DM, Doe's No. 2 and 4.

C. Unfair Debt Collection Practices.

29. The Fair Debt Collections Practices Act ("FDCPA") protects Plaintiff from harassing, embarrassing, intrusive, deceptive, etc... means of collection by debt collectors. In doing so, it grants a liberty interest under federal law to be protected from such oppressive debt collection practices.

30. On or about October 19, 2016, Defendants MBI, Hobar, and Doe's No. 1 and 3, sent Plaintiff, what appeared to be a dunning letter alleging that Plaintiff was allegedly to pay a debt to Defendants DM, and  Doe's No. 2 and 4. Plaintiff in this matter is a natural person. The alleged debt is allegedly for a ring for Plaintiff's personal use, that Plaintiff purchased on credit from Defendants DM, and Doe's No. 2 and 4.[1]

31. Defendants MBI, Hobar, and Doe's No. 1 and 3 is in the principle business of collecting debts. Through Defendants MBI, Hobar, and Doe's No. 1 and 3's own admission they stated in, what appears to be a dunning letter dated October 19, 2016, that Defendants MBI, Hobar, and Doe's No. 1 and 3 where "Credit and Collections for the Danbury Mint".

---

[1] As stated later in this Complaint, it appears that MBI may be affiliated with DM and may be the same company, upon information and belief, although it is confusing to Plaintiff by the text of the letter.

32. Defendants MBI, Hobar, and Doe's No. 1 and 3 have sent Plaintiff a letter via the United States Mail, which appears to be a dunning letter, that alleges that Plaintiff owes monies to DM, and Doe's No. 2 and 4. The principle purpose of the business in which Defendants MBI, Hobar, and Doe's No. 1 and 3 are in is to collect monies allegedly owed to DM, and Doe's No. 2 and 4.

   i.   *Rights of Plaintiff Listed in "Dunning" Not Clear.*

      a.  Rights Not Clearly Visible In Form.

33. As explained supra, on or about October 19, 2016, Defendants MBI, Hobar, and Doe's No. 1 and 3 sent Plaintiff, what appears to be a dunning letter. The "dunning" letter was printed on paper that was marbleized with white and light gold color on the front and back of the letter. The dunning letter at issue was the "initial communication" as defined by the FDCPA.

34. In or about April 29, 1980, the Courts have held that a dunning letter must contain the rights conferred to Plaintiff in a clear and visible manner that is not smaller than the original type font size of the rest of the letter is written in and cannot be onerous to read (e.g., not contain super light font colors on obstructive patterned paper). Essentially, the Courts decisions that have decided the issue stand for the proposition that such rights conferred by the FDCPA must be clearly visible and unobstructed to the reader, in this case, Plaintiff. The Courts held that if the rights conferred by the FDCPA are not clearly visible and are onerous to read, it violates the FDCPA.

35. Upon careful review of the "dunning" letter at issue by Plaintiff upon receipt, it appeared at first glance that there was no required warnings or listing of rights although at the bottom of the "dunning" letter it appears the words "Information concerning your rights appears on the reverse of this letter".

36. Upon a careful review at the reverse side of the "dunning letter, it appears at first glance that there is no "Information concerning your rights appears on the reverse of this letter" as the "dunning" letter at issue contends. Thus, the form via of the dunning letter based upon the font size, font color, and design on the paper overshadows and confuses Plaintiff as to his rights.

37. Specifically, on a second and more in depth closer glance, Plaintiff noticed Defendants MBI, Hobar, and Doe's No. 1 and 3 designed the "dunning" letter with faint really light gray (boarder lining on being non-existent) type font, which was smaller type font than what was normally utilized in the rest of the "dunning" letter, and the font obscured to the point of unreadability. Again, the blending of the nearly non-existence of the really light gray of the font, the size of the font, and the design on the paper, it made whatever was stated on the back of the "dunning" letter, at best, onerous, if not impossible to read. This exhibits a policy of Defendants MBI, Hobar, and Doe's No. 1 and 3 to make Plaintiff disregard the notice to dispute the dunning letter and other of Plaintiff's rights.

38. Because of the obstructive manner in which Defendants MBI, Hobar, and Doe's No. 1 and 3 designed the "dunning" letter, Plaintiff was uncertain of his rights under the FDCPA, including but not limited to (1) the right to appeal the balance within a certain time frame, (2) what the communication over the "dunning" letter was going to be used for, etc.... Thus, based upon this uncertainty, Plaintiff was not sure of his rights under the FDCPA as was required to be noticed on the "dunning" letter at issue. Thus, Plaintiff was stymied from his right to challenge the "dunning" letter due to no fault of his own.

39. Because of the inability to challenge the "dunning" letter at issue, Defendants MBI, Hobar, and Doe's No. 1 and 3 still are charging Plaintiff with the alleged debt to DM, Doe's No. 2 and 4, which has caused Plaintiff's credit score to undoubtedly unnecessarily and unfairly drop and Plaintiff to go through severe mental and emotional distress in his day to day living.

   **b. Back of Dunning Letter Missing Language or Address To Identify it is to Plaintiff.**

40. On or about October 19, 2016, Defendants MBI, Hobar, and Doe's No. 1 and 3 sent Plaintiff what appears to be a dunning letter. The dunning letter was in regards to an alleged debt that Plaintiff owed to DM, and Doe's No. 2 and 4.

The dunning letter at issue was the "initial communication" as defined by the FDCPA.

41. Upon careful examination and review of the "dunning" letter at issue by Plaintiff upon receipt it appeared at the bottom of the letter the text "Information concerning your rights appears on the reverse of this letter".

42. In or about April 29, 1980, the Courts have held that if a dunning letter contains the rights of a debtor, such as Plaintiff, on the back or "reverse" side of the dunning letter, then the rights must contain an address or some other identifying information that it refers to the debtor, or in this case at bar Plaintiff. The Courts held that if the rights under the FDCPA where listed on the back or the "reverse" side of a dunning letter did not contain an address or other identifying information allowing the debtor to know that the message was authored to him/her, the letter violated the FDCPA.

43. Thus, upon review of the "reverse" side of the "dunning letter at issue, although, as explained supra, there appeared to be faint really light gray text of sorts, so that it remained unreadable, there appeared to be no address or any other indication that the message, whatever it was, was to Plaintiff.

44. Because there was no address or other identifying information that the faint notice on the back of the "dunning" letter that the information was to Plaintiff, it caused Plaintiff great confusion and caused Plaintiff to be unable to dispute the "dunning" letter properly with Defendants MBI, Hobar, and Doe's No. 1 and 3.

45. Because of the inability to challenge the "dunning" letter at issue, Defendants MBI, Hobar, and Doe's No. 1 and 3 still are charging Plaintiff with the alleged debt to DM, Doe's No. 2 and 4, which has caused Plaintiff's credit score to undoubtedly unnecessarily and unfairly drop and Plaintiff to go through severe mental and emotional distress in his day to day living.

### ii.   Making Account Number Visible Through Envelope Window.

46. On or about October 19, 2016, Defendants MBI, Hobar, and Doe's No. 1 and 3 sent Plaintiff an apparent dunning letter. The dunning letter was in regards

to an alleged debt that Plaintiff owed to DM, and Doe's No. 2 and 4. The dunning letter at issue was the "initial communication" as defined by the FDCPA. The letter appeared in an envelope the contained a glassine window.

47. In or about April 8, 2014, the Courts held that the placement of an account number in a position that it can be viewed by the public through a glassine window on an envelope violates the FDCPA.

48. Upon receipt of the dunning letter at issue, Plaintiff noticed, prior to removal of the "dunning" letter from the envelope, that Defendants MBI, Hobar, and Doe's No. 1 and 3 authored contained Plaintiff's account number from the alleged debt to DM, and Doe's No. 2 and 4.

49. Because Defendants MBI, Hobar, and Doe's No. 1 and 3 authored the "dunning" letter at issue to reflect Plaintiff's account number with DM, and Doe's No.'s 2 and 4, and also included Plaintiff's physical address, this could lead to personal and private information about the alleged debt to be easily disseminated and discerned by other third parties.

50. Defendants MBI, Hobar, and Doe's No. 1 and 3 placement of Plaintiff's account number to the alleged debt at issue so that it is visible to the public through a glassine window in the envelope has placed Plaintiff at an increased risk of a breach to his privacy.

   *iii.*   *Envelope Was Transparent so That it Allowed Third Parties to Read Correspondents.*

51. Upon receipt of, what appeared to be, a dunning letter sent by Defendants MBI, Hobar, and Doe's No. 1 and 3, prior to opening the envelope, Plaintiff could read the text of the "dunning" letter through the envelope as if the letter was not in the envelope itself. That being said, the envelope containing the "dunning" letter was not opaque enough to conceal the text of the "dunning" letter.

52. U.S. Congress passed a law that is referred to as the FDCPA which states in clear and unambiguous language that the Debt Collector, in this case Defendants MBI, Hobar, and Doe's No. 1 and 3, must transmit dunning

letters to the debtor, in this case Plaintiff, via means that does not transmit any private information to third parties whom are unprivileged to see the correspondence.

53. Clearly visible through the paper of the envelope was the text averring to a "final notice" and spoke about it would be the last chance for Plaintiff to pay his alleged debt to Defendants DM, and Doe's No. 2 and 4.

54. Because Defendants MBI, Hobar, and Doe's No. 1 and 3 had failed to make the paper utilized for the envelopes more opaque to conceal the text of the "dunning" letter, Defendants MBI, Hobar, and Doe's No. 1 and 3 violated Plaintiff's FDCPA rights.

*iv.     Envelope Contains Other Language, Symbols, etc....*

55. Again, on or about October 19, 2016, Defendants MBI, Hobar, and Doe's No. 1 and 3 authored a "dunning" letter to Plaintiff. It alleged that Plaintiff owed Defendants DM, and Doe's No. 2 and 4 an undisclosed amount of money for alleged services rendered.

56. The FDCPA strictly maintains that the envelopes of debt collectors are to list the address of the debt collectors only and nothing more. It further states that a violation of this mandate violates the FDCPA.

57. A short time later, Plaintiff received the "dunning" letter from Defendants MBI, Hobar, and Doe's No. 1 and 3 and noticed that the envelope that contained the letter contained the words "MBI, Inc." on the envelope as well.

58. Any reasonable person viewing the envelope in question could ascertain through readily available means (e.g., the internet, phone book, etc...) via public records that MBI, Inc. refers to a credit collection agency.

*v.     Debt Collector Falsely Appearing as Third Party.*

59. On or about October 19, 2016, in authoring a "dunning" letter to Plaintiff, Defendants MBI, Hobar, and Doe's No. 1 and 3 attempted to separate

themselves from Defendants DM, and Doe's No. 2 and 4 by utilization of a different company name.[2]

60. Upon review of the "dunning" letter by Plaintiff upon receipt, Plaintiff noticed, in comparing the address of Defendants MBI and DM that they mirrored each other.

61. Upon information and belief, Defendants MBI, Hobar, and Doe's No. 1 and 3 attempted to deceive Plaintiff to thinking that the "dunning" letter at issue was issued by a third party debt collector and was merely issued by Defendants DM, and Doe's No. 2 and 4 themselves so that Plaintiff would think that he is paying a third party, e.g., Defendants MBI, Hobar, and Doe's No. 1 and 3, any alleged debt owed when in actuality he is paying Defendants DM, and Doe's No. 2 and 4.

    *vi.   Dunning Letter Utilizes Language to Damage Reputation of Plaintiff.*

62. On or about October 19, 2016, Defendants MBI, Hobar, Doe's No. 1 and 3 authored a "dunning" letter to Plaintiff for alleged undisclosed services rendered and an undisclosed amount.

63. Upon receipt of the "dunning" letter, Plaintiff noticed that Defendants MBI, Hobar, Doe's No. 1 and 3 implicitly stated that they would take steps to embarrass Plaintiff and place his name to other collection organizations for collection of the alleged debt, even though it was known by Defendants MBI, Hobar, Doe's No. 1 and 3 that it was being disputed.

64. Defendants MBI, Hobar, Doe's No. 1 and 3 continue by threatening to send Plaintiff's alleged delinquent DM account to an "outside debt collection agency" and it would be an "embarrassing process" for Plaintiff.

65. Any referral of Plaintiff's alleged debt at issue, especially while it is being challenged by Plaintiff would result in severe prejudice by third parties for

---

[2] Although the "dunning" letter contains the caveat that DM is an operating division of MBI, Inc., it is still confusing to Plaintiff is DM actually sent any alleged debt owed allegedly by Plaintiff to a third party debt collector or not.

credit as the sharing of such alleged debt at issue would make Plaintiff look in the eyes of a third party as a "dead-beat debtor" and thus be red-flagged.

### vii.    *Threatening Language And Overtones Utilized in Dunning Letter.*

66. On or about October 19, 2016, Defendants MBI, Hobar, Doe's No. 1 and 3 authored a "dunning" letter to Plaintiff for an alleged undisclosed amount and services rendered allegedly.

67. Upon review of the "dunning" letter at issue, Plaintiff noticed in the third paragraph, Defendants MBI, Hobar, Doe's No. 1 and 3 author as follows:

> "Let me be clear: If we do not hear from you or receive your payment within the next 30 days, we will turn your account over to an outside debt collection agency."

The phrase "let me be clear" is generally an implied phrase of a threat.

68. In the last paragraph of the "dunning" letter at issue, Plaintiff noticed that Defendants MBI, Hobar, Doe's No. 1 and 3 acknowledge and threaten to make the process embarrassing for Plaintiff if he does not make his alleged payments "today".

69. The effects of the threats, implied and explicit, from Defendants MBI, Hobar, Doe's No. 1 and 3 made Plaintiff intimidated and confused as to what actions he should take.

### viii.    *Deceptive Practices Utilized by the Text of the Dunning Letter.*

   a. Utilization of language that is open to more than one interpretation.

70. As discussed, on or about October 19, 2016, Defendants MBI, Hobar, and Doe's No. 1 and 3 authored a dunning letter to the Plaintiff.

71. In authoring the "dunning" letter at issue, once received by Plaintiff, he reviewed the "dunning" letter at issue and found that Defendants MBI, Hobar, and Doe's No. 1 and 3 authored the letter and stated:

> "If you do not pay this past due balance within 30 days, we will have no choice but to turn your account over to an outside debt collection agency."

72. Later in the same "dunning" letter at issue, Defendants MBI, Hobar, Doe's No. 1 and 3 authored the letter to state:

> "Please avoid this embarrassing process by sending your payment today."

73. These two statements are contradictory depending on who views them. Although Defendants MBI, Hobar, Doe's No. 1 and 3 have stated that the payments were due not later than 30 days, they maintain later in the letter that they want them immediately or "today". Because of the authoring of two different timelines, e.g., 30 days v. today, Plaintiff was not sure when Defendants MBI, Hobar, Doe's No. 1 and 3 proposed deadline, 30 days or today, was being directed.

74. In addition, Defendants MBI, Hobar, Doe's No. 1 and 3 authored the dunning letter stating "we will do whatever we can to accommodate [Plaintiff's] needs." In the very next paragraph Defendants MBI, Hobar, Doe's No. 1 and 3 states "Let me be clear: If we do not hear from you or receive your payment within the next 30 days, we will turn your account over to an outside debt collection agency. These statements are at odds with each other. First Defendants MBI, Hobar, Doe's No. 1 and 3 state that they will work with Plaintiff but then they state in the next paragraph that Plaintiff must pay in 30 days to avoid further collection activities. This is far from working with the Plaintiff.

   b. Failure to enclose alleged billing amount allegedly owed.

75. As stated previously, on or about October 19, 2016, Defendants MBI, Hobar, and Doe's No. 1 and 3 had authored a "dunning" letter to Plaintiff informing him of an alleged undisclosed amount of debt to Defendants DM, and Doe's No. 2 and 4.

76. Upon review of the "dunning" letter authored by MBI, Hobar, and Doe's No. 1 and 3, Plaintiff noticed that there was no specific amount of debt listed within the "dunning" letter.

77. Although the "dunning" letter at issue did purport that there was an account statement that was sent with the dunning letter, this was not true. Plaintiff never received an account statement of any alleged monies due. Thus, because of this failure to include any statement, etc... that would otherwise show that Plaintiff owes a debt allegedly to Defendants DM, and Doe's No. 2 and 4, Plaintiff is unsure of what he owes, if anything, to Defendants DM, and Doe's No. 2 and 4.

      *ix.*    *Dunning Letter Does Not Disclose That the Debt Collector is Licensed by the Minnesota Department of Commerce.*

78. As specifically stated supra, on or about October 19, 2016, Defendants MBI, Hobar, and Doe's No. 1 and 3 authored a "dunning" letter.

79. The Minnesota Legislation has enacted a law that demands that any initial "dunning" letter must state a disclosure as follows: "This collection agency is licensed by the Minnesota Department of Commerce."

80. Although the "dunning" letter purports that it is a "final notice" as designated at the top and in the body of the "dunning" letter at issue, it is really the first correspondence that Plaintiff has received from Defendants MBI, Hobar, and Doe's No. 1 and 3.

81. Upon receipt of the "dunning" letter, Plaintiff had reviewed the "dunning" letter closely. Upon close and careful review of the "dunning" letter at issue there appeared no disclosure statement by Defendants MBI, Hobar, and Doe's No. 1 and 3 that stated "This collection agency is licensed by the Minnesota Department of Commerce."

82. Because of the failure to disclose that the collection agency was licensed by the Minnesota Department of Commerce caused significant mental, emotional, and economical injury to Plaintiff by failing to adhere to Plaintiff's rights as a consumer.

VI. Causes of Action.

A. <u>*Unfair Use Of Billing Practices.*</u>

83. The Fourteenth Amendment guarantees that "[n]o State shall... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiff brings this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983.

### Cause of Action I.

### Use of Unfair Billing Practices in Violation of the Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution and Minnesota Constitution.

84. Plaintiff incorporates all previous allegations as if fully set forth herein.

85. A business and its employees such as St. Luke are parties in which may be sued under 42 U.S.C. § 1983.

86. A claim for failure to provide procedural due process is stated by pleading that (1) a violation of a property or liberty interest, and that (2) proper due process protections where not taken. A liberty interest may be developed by a federal or state statute by the use of predicates requiring the act or omission to be done. Such predicates are found by words such as "shall" contained in the text of the respective statute. The federal or state statute may also contain the relevant procedural protections required.

87. In the Fair Credit Billing Act (15 U.S.C. § 1666, et seq.) it provides that "the creditor *shall* unless the obligor has, after giving such written notice and before the expiration of the time limits specified, agreed that the statement was correct – (A) not later than 30 days after the receipt of the notice, send a written acknowledgment thereof to the obligor, unless the action required in subparagraph (B) is taken within thirty-day period, and not later than two billing cycles of the creditor (in no event later than 90 days) after the receipt of the notice and prior to taking any action to collect the amount, or any part thereof indicated by the obligor under paragraph (2) either – (i) make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amounts erroneously billed, and transmitted to the obligor a notification of such corrections and the creditor's explanation of any

charge in the amount indicated by the obligor under paragraph (2) and, if any such change is made and the obligor so requests, copies of documentary evidence of the obligors indebtness; or explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness. In the case of a billing error where the obligor alleges that the creditor's billing statement reflects goods not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction, a creditor may not construe such amount to be correctly shown unless he determines that such goods were actually delivered, mailed, or otherwise sent to the obligor and provides the obligor with a statement of such determination. Billing errors cognizable under the Fair Credit Billing Act are enumerated within 15 U.S.C. § 1666(b).

88. Thus, in short, Plaintiff has a liberty interest in having Defendants DM, Doe No.'s 2 and 4, not later than 30 days to send a written notice of the challenge to Plaintiff, and not greater than 90 days or two billing cycles later send the Plaintiff a notice of the decision of Defendants DM, Doe No.'s 2 and 4 to the contested Bill at issue.

89. As explained supra, Defendants DM, Doe No.'s 2 and 4 failed to send such notice to Plaintiff of either the receipt of the dispute letter nor the final decision on the dispute letter. In fact although Defendants DM, Doe No.'s 2 and 4 received the challenge letter to the respective Bill at issue, Defendants, DM, Doe No.'s 2 and 4 never responded to any letters disputing the Bill at issue.

90. To meet adequate due process procedures, as defined in the Fair Credit Billing Act, Defendants DM, Doe No.'s 2 and 4 should have provided Plaintiff with at least a notification that Defendants DM, Doe No.'s 2 and 4 received the challenge and then should have provided a final determination to the

challenge. However, Defendants DM, Doe No.'s 2 and 4 had failed to do any of these acts.

91. Thus, the acts and omissions of Defendants DM, Doe No.'s 2 and 4, as specifically described by the acts and omissions of this Complaint, constitute a failure to provide Plaintiff with adequate procedures for the billing of an debt in violation of clearly established rights under the Fourteenth Amendment to the U.S. Constitution and Art. 1, Sec. 2 of the Minnesota Constitution. Plaintiff seeks to enforce the correction of this violation under the authority of 42 U.S.C. § 1983.

92. Defendant Doe No. 2, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at DM that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

93. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants DM, Doe No.'s 2 and 4's acts and omissions as specifically set forth above.

94. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants DM, Doe No.'s 2 and 4's acts and omissions as specifically set forth above.

Cause of Action II.

Use of Unfair Billing Practices in Violation of the Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution and Minnesota Constitution.

95. Plaintiff incorporates all previous allegations as if fully set forth herein.

96. A claim for failure to provide substantive due process to is stated by pleading (1) a violation of a property or liberty interest, and that (2) the violation was done arbitrarily and capriciously. A liberty interest may be developed by a federal or state statute by the use of predicates requiring the act or omission

to be done. Such predicates are found by words such as "shall" contained in the text of the respective statute. The federal or state statute may also contain the relevant procedural protections required.

97. Thus, in short, Plaintiff has a liberty interest in having Defendants DM, Doe No.'s 2 and 4, not later than 30 days to send a written notice of the challenge to Plaintiff, and not greater than 90 days or two billing cycles later send the Plaintiff a notice of the decision of Defendants DM, Doe No.'s 2 and 4 to the contested Bill at issue.

98. As explained supra, Defendants DM, Doe No.'s 2 and 4 failed to send such notice to Plaintiff of either the receipt of the dispute letter nor the final decision on the dispute letter. In fact although Defendants DM, Doe No.'s 2 and 4 received the challenge letter to the respective Bill at issue, Defendants, DM, Doe No.'s 2 and 4 never responded to any letters disputing the Bill at issue. Defendants DM, Doe No.'s 2 and 4 had provided no reason for ignoring Plaintiff's letters at issue.

99. Thus, the acts and omissions of Defendants DM, Doe No.'s 2 and 4 constitute arbitrary actions to provide unfair billing practices in violation of clearly established rights under the Fourteenth Amendment to the U.S. Constitution and Art. 1, Sec. 2 of the Minnesota Constitution. Plaintiff seeks to enforce the correction of this violation under the authority of 42 U.S.C. § 1983.

100. Defendant Doe No. 2, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at DM that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

101. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants DM, Doe No.'s 2 and 4's acts and omissions as specifically set forth above.

102. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants DM, Doe No.'s 2 and 4's acts and omissions as specifically set forth above.

## Cause of Action III.

### Use of Unfair Billing Practices in Violation of the Fair Credit Billing Act (15 U.S.C. § 1666, et seq.)

103. Plaintiff incorporates all previous allegations as if fully set forth herein.

104. The Fair Credit Billing Act (15 U.S.C. § 1666, et seq.) requires Defendants DM, Doe's No. 2 and 4 to, within 30 days of a letter disputing a bill from Plaintiff, to notify Plaintiff of such receipt of such a challenge to the bill, and not later than 90 days to provide a letter to Plaintiff explaining the outcome of the respective dispute.

105. To state a violation of the Fair Credit Billing Act, Plaintiff must plead (1) an existence of a billing error, (2) timely notification of the error, and (3) the Defendants failure to comply with the required procedures of the Fair Credit Billing Act.

106. As explained specifically within the specific acts and omissions of the Complaint, the Plaintiff never received a response to his letter reporting billing errors from Defendants DM, Doe's No. 2 and 4.

107. The doctrine of respondeat superior applies to an action of violations of the Fair Credit Billing Act such as the one presented in the instant Action.

108. Thus, the acts and omissions of Defendants DM, Doe's No. 2 and 4 constitute unfair billing practices in violation of clearly established rights under Fair Credit Billing Act pursuant to 15 U.S.C. § 1666, et seq.

109. Defendant Doe No. 2, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at DM that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

110. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants DM, Doe's No. 2 and 4's acts and omissions as specifically set forth above.

111. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants DM, Doe's No. 2 and 4's acts and omissions as specifically set forth above.

Cause of Action IV.

Use of Unfair Billing Practices in Violation of the Tort of Negligence.

112. Plaintiff incorporates all previous allegations as if fully set forth herein.

113. In order to state a claim for relief pursuant for the tort of negligence, the Plaintiff must plead (1) a duty owed to the Plaintiff, (2) a breach of that duty, (3) injury, and (4) the injury was sustained as a proximate cause of the breach of the duty owed.

114. The Fair Credit Billing Act mandates Defendants DM, Doe's No. 2 and 4, after being served with a challenge to a bill, within 30 days, to verify the challenge made to the respective bill, and prior to, not later than 90 days to notify Plaintiff of a final disposition to the challenge.

115. Defendants DM, Doe's No. 2 and 4 never responded to the Plaintiff's challenge as specifically explained by the specific acts and omissions of this Complaint. This caused the Plaintiff severe injury and threatened to cause the Plaintiff even more in the future as specifically explained in the specific acts and omissions of this Complaint.

116. The doctrine of respondeat superior applies to an action of the tort of negligence such as the one presented in the instant Action.

117. Thus, the acts and omissions of Defendants DM, Doe's No. 2 and 4 constitute a violation of the tort of Negligence.

118. Defendant Doe No. 2, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at DM that allowed the unfair billing practices and did nothing

to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

119. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants DM, Doe's No. 2 and 4's acts and omissions as specifically set forth above.

120. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants DM, Doe's No. 2 and 4's acts and omissions as specifically set forth above.

Cause of Action V.

Use of Unfair Billing Practices in Violation of the Tort of Intentional Infliction Of Emotional Distress (hereinafter, "IIED").

121. Plaintiff incorporates all previous allegations as if fully set forth herein.

122. The intentional infliction of emotional distress is actionable under the standard of respondeat superior.

123. Furthermore, any action that violates the law tends to be significant enough to cause intentional infliction of emotional distress. Defendants DM, Doe's No. 2 and 4 violated the Fair Credit Billing Act by not responding to Plaintiff's billing challenges.

124. The Plaintiff suffered severe emotional distress due to the Defendants DM, Doe's No. 2 and 4 acts and omissions specifically stated herein this Complaint.

125. Thus, the acts and omissions of Defendants DM, Doe's No. 2 and 4 constitute a violation of the tort of intentional infliction of emotional distress.

126. Defendant Doe No. 2, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at DM that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

127. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants DM, Doe's No. 2 and 4's acts and omissions as specifically set forth above.

128. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants DM, Doe's No. 2 and 4's acts and omissions as specifically set forth above.

Cause of Action VI.

Use of Unfair Billing Practices in Violation of the Tort of Negligent Infliction Of Emotional Distress (hereinafter, "NIED").

129. Plaintiff incorporates all previous allegations as if fully set forth herein.

130. The doctrine of respondeat superior applies to an action of the tort of NIED such as the one presented in the instant Action.

131. The elements to stating a claim for NIED are the exact same as that of stating a claim for negligence.

132. Thus, the acts and omissions of Defendants DM, Doe's No. 2 and 4 constitute a violation of the tort of negligent infliction of emotional distress.

133. Defendant Doe No. 2, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at DM that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

134. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants DM, Doe's No. 2 and 4's acts and omissions as specifically set forth above.

135. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants DM, Doe's No. 2 and 4's acts and omissions as specifically set forth above.

Cause of Action VII.

Use of Unfair Billing Practices in Violation of Minnesota Statute § 323.37(1)·(12).

136. Plaintiff incorporates all previous allegations as if fully set forth herein.

137. The same acts and omissions, including more as listed in Minn. Stat. § 323.37(1)·(12) that violate the acts of the Fair Debt Collection Practices Act also violate Minn. Stat. § 323.37(1)·(12).

138. The doctrine of respondeat superior applies to an action for violation of Minn. Stat. § 323.37(1)·(12) such as the one presented in the instant Action.

139. Thus, the acts and omissions of Defendants DM, Doe's No. 2 and 4 constitute a violation of the rights of Plaintiff secured under Minn. Stat. § 323.37(1)·(12).

140. Defendant Doe No. 2, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at DM that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

141. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants DM, Doe's No. 2 and 4's acts and omissions as specifically set forth above.

142. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants DM, Doe's No. 2 and 4's acts and omissions as specifically set forth above.

Cause of Action VIII.

Use of Unfair Billing Practices in Violation of Slander.

143. Plaintiff incorporates all previous allegations as if fully set forth herein.

144. The determination of whether a communication is defamatory/slanderous is a question of law.

145. The doctrine of respondeat superior applies to an action of the tort of slander such as the one presented in the instant Action.

146. Thus, the acts and omissions of Defendants DM, Doe's No. 2 and 4 constitute a violation of the tort of slander.

147. Defendant Doe No. 2, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at DM that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

148. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants DM, Doe's No. 2 and 4's acts and omissions as specifically set forth above.

149. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants DM, Doe's No. 2 and 4's acts and omissions as specifically set forth above.

## B. *Unfair Use of Debt Collection Practices.*

### Cause of Action IX.

Use of Unfair Debt Collection Practices in Violation of the Procedural Due Process Clause of the Fourteenth Amendment Of The U.S. Constitution And Minnesota Constitution.

150. Plaintiff incorporates all previous allegations as if fully set forth herein.

151. Pursuant to the Fair Debt Collection Practices Act, Plaintiff has a liberty interest under federal law in having Defendants MBI, Hobar, Doe's No. 1 and 3 utilize fair debt collection procedures that are enunciated in 15 U.S.C. §1692, et seq.

152. Defendants MBI, Hobar, Doe's No. 1 and 3 have not done so, as specifically described in specific detail by the specific acts and omissions of this Complaint.

153. To meet adequate due process procedures, Defendants MBI, Hobar, Doe's No. 1 and 3 should have utilized fair debt collection procedures outlined in 15 U.S.C. §1692, et seq.

154. Thus, the acts and omissions of Defendants MBI, Hobar, Doe's No. 1 and 3, as specifically described by the acts and omissions of this Complaint, constitute a failure to provide fair due process in fair debt collection procedures in the collection of a debt in violation of clearly established rights under the Fourteenth Amendment to the U.S. Constitution and Art. 1, Sec. 2 of the Minnesota Constitution. Plaintiff seeks to enforce the correction of this violation under the authority of 42 U.S.C. § 1983.

155. Defendant Hobar, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at Defendant MBI that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

156. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants MBI, Hobar, Doe's No. 1 and 3's acts and omissions as specifically set forth above.

157. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants MBI, Hobar, Doe's No. 1 and 3's acts and omissions as specifically set forth above.

## Cause of Action X.

### Use of Unfair Debt Collection Practices in Violation of the Substantive Due Process Clause of the Fourteenth Amendment Of The U.S. Constitution And Minnesota Constitution.

158. Plaintiff incorporates all previous allegations as if fully set forth herein.

159. The acts and omissions of Defendants MBI, Hobar, Doe's No. 1 and 3 constitute arbitrary actions to provide unfair billing practices in violation of clearly established rights under the Fourteenth Amendment to the U.S. Constitution and Art. 1, Sec. 2 of the Minnesota Constitution. Plaintiff seeks to enforce the correction of this violation under the authority of 42 U.S.C. § 1983.

160. Defendant Doe No. 1, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at MBI that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

161. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants MBI, Hobar, Doe's No. 1 and 3's acts and omissions as specifically set forth above.

162. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants MBI, Hobar, Doe's No. 1 and 3's acts and omissions as specifically set forth above.

## Cause of Action XI.

### Use of Unfair Debt Collection Practices in Violation of the Fair Debt Collection Practices Act (hereinafter, "FDCPA") (15 U.S.C. § 1692, et seq.).

163. Plaintiff incorporates all previous allegations as if fully set forth herein.

164. The FDCPA is made up of numerous subsections. Plaintiff need not plead that a specific subsection of the FDCPA has been violated. If one violation of a subsection of the FDCPA is found, Defendant has violated the FDCPA.

165. When a litigant, such as the instant Plaintiff, brings a claim under the FDCPA the court tests the claim under the "least sophisticated consumer" standard; that is, whether the least sophisticated consumer would be misled by the defendants actions. The standard protects the gullible and the shrewd alike.

166. In order to state a claim for relief under the FDCPA, a party must allege that (1) he is a consumer under the meaning of the FDCPA, (2) the debt was utilized for personal, family, or household purposes, (3) the defendant must be a debt collector as defined under the FDCPA, and (4) the defendant's violation under the FDCPA.

167. A "consumer" is defined under the FDCPA as "any natural person obligated or allegedly obligated to pay any debt".

168. Plaintiff, a consumer, as specifically stated supra, is a natural person, whom has been accused by Defendants as a whole for allegedly owing a debt for some alleged services rendered.

169. A "debt collector" is defined under the FDCPA as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 808(6) [15 USCS § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."

170. Defendants MBI, Hobar, and Doe's No. 1 and 3, via their own admissions are debt collectors.

171. As Plaintiff stated specifically supra, by the acts and omissions of this Complaint, after review of the Bill at issue, it appears that Defendants MBI, Hobar, and Doe's No. 1 and 3 are billing Plaintiff for items allegedly purchased by Plaintiff for personal use by him.

172. The doctrine of respondeat superior applies to an action of violations of the Fair Credit Billing Act such as the one presented in the instant Action.

173. Thus, the acts and omissions of Defendants MBI, Hobar, Doe's No. 1 and 3 constitute unfair billing practices in violation of clearly established rights under Fair Debt Collection Practices Act pursuant to 15 U.S.C. § 1692, et seq.

174. Defendant Doe No. 1, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were

implemented at MBI that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

175. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants MBI, Hobar, Doe's No. 1 and 3's acts and omissions as specifically set forth above.

176. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants MBI, Hobar, Doe's No. 1 and 3's acts and omissions as specifically set forth above.

## Cause of Action XII.

Use of Unfair Debt Collection Practices in Violation of the Tort of Negligence.

177. Plaintiff incorporates all previous allegations as if fully set forth herein.

178. Pursuant to the Fair Debt Collection Practices Act, Defendants have a duty under federal law in having Defendants MBI, Hobar, Doe's No. 1 and 3 utilize fair debt collection procedures that are enunciated in 15 U.S.C. §1692, et seq.

179. Defendants MBI, Hobar, Doe's No. 1 and 3 have not done so, as specifically described in specific detail by the specific acts and omissions of this Complaint.

180. The doctrine of respondeat superior applies to an action of the tort of negligence such as the one presented in the instant Action.

181. Thus, the acts and omissions of Defendants MBI, Hobar, Doe's No. 1 and 3 constitute a violation of the tort of Negligence.

182. Defendant Doe No. 1, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at MBI that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

183. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants MBI, Hobar, Doe's No. 1 and 3's acts and omissions as specifically set forth above.

184. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants MBI, Hobar, Doe's No. 1 and 3's acts and omissions as specifically set forth above.

## Cause of Action XIII.

### Use of Unfair Debt Collection Practices in Violation of the Tort of Intentional Infliction Of Emotional Distress (hereinafter, "IIED").

185. Plaintiff incorporates all previous allegations as if fully set forth herein.

186. Thus, the acts and omissions of Defendants MBI, Hobar, and Doe's No. 1 and 3 constitute a violation of the tort of intentional infliction of emotional distress.

187. Defendant Doe No. 1, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at MBI that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

188. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants MBI, Hobar, and Doe's No. 1 and 3's acts and omissions as specifically set forth above.

189. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants MBI, Hobar, and Doe's No. 1 and 3's acts and omissions as specifically set forth above.

## Cause of Action XIV.

### Use of Unfair Debt Collection Practices in Violation Tort of Negligent Infliction Of Emotional Distress (hereinafter, "NIED").

190. Plaintiff incorporates all previous allegations as if fully set forth herein.

191. The elements to stating a claim for NIED are the exact same as that of stating a claim for negligence.

192. Thus, the acts and omissions of Defendants MBI, Hobar, and Doe's No. 1 and 3 constitute a violation of the tort of negligent infliction of emotional distress.

193. Defendant Doe No. 1, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were implemented at MBI that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

194. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants MBI, Hobar, and Doe's No. 1 and 3's acts and omissions as specifically set forth above.

195. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants MBI, Hobar, and Doe's No. 1 and 3's acts and omissions as specifically set forth above.

## Cause of Action XV.

### Use of Unfair Debt Collection Practices in Violation of Minnesota Statute § 323.37(1)·(12).

196. Plaintiff incorporates all previous allegations as if fully set forth herein.

197. The same acts and omissions, including more as listed in Minn. Stat. § 323.37(1)·(12) that violate the acts of the Fair Debt Collection Practices Act also violate Minn. Stat. 323.37(1)·(12).

198. Thus, the acts and omissions of Defendants MBI, Hobar, Doe's No. 1 and 3 constitute a violation of the rights of Plaintiff secured under Minn. Stat. § 323.37(1)·(12).

199. Defendant Doe No. 1, in his/her individual capacity as well as his/her official capacity, was aware of the policies and practices that were

implemented at MBI that allowed the unfair billing practices and did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

200. Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants MBI, Hobar, Doe's No. 1 and 3's acts and omissions as specifically set forth above.

201. Unless relief is granted, Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants MBI, Hobar, Doe's No. 1 and 3's acts and omissions as specifically set forth above.

## VII. PRAYER FOR RELIEF.

WHEREFORE, Plaintiff prays for relief as follows:

A. That the unlawful conduct alleged herein be declared to be illegal and in violation of the federal and state constitutional, statutory and common law claims alleged herein;

B. That the Court order Defendants to expunge any billing or documentation related to such billing that was the subject of the specific acts and omissions of this Complaint and notification of such expungement forthwith to Plaintiff;

C. That Defendants be permanently enjoined from any further billing of Plaintiff in regards to the specific acts and omissions of this Complaint;

D. Plaintiff recover actual or nominal damages, as provided by law, determined to have been sustained to Plaintiff, and that judgment be entered against Defendants on behalf of Plaintiff;

E. The Plaintiff receive compensatory damages as provided and allowed by federal and state law, and that judgment be entered against Defendants on behalf of Plaintiff;

F. The Plaintiff receive statutory damages as provided and allowed by federal and state law, and that judgment be entered against Defendants on behalf of Plaintiff;

G. The Plaintiff receive punitive damages as provided and allowed by federal and state law, and that judgment be entered against Defendants on behalf of Plaintiff;

H. That Plaintiff receive pre-judgment and post-judgment interest as allowed by law;

I. That Plaintiff recover costs of the suit, attorneys' fees and expenses as allowed by law; and

J. All other relief allowed by law and equity.

## VIII. Jury Trial Demanded.

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: Wednesday, December 07, 2016                Respectfully Submitted,

Eric Michael Sorenson
1111 Highway 73
Moose Lake, Minnesota 55767
Plaintiff, Pro Se

## IX. Complaint Verification.

I, Eric Michael Sorenson, being the above named Plaintiff, do hereby state and certify under the penalties of perjury, pursuant to 18 U.S.C. § 1621, that the aforementioned paragraphs and exhibits attached hereto are true and correct to the best of my knowledge and belief, with the exception of those paragraphs that are made under information and belief, and as to those I believe them to be true and correct to the best of my information and belief.

Executed on this 07 day of December, 2016 in Moose Lake, Minnesota.

Respectfully Submitted,

Eric Michael Sorenson
1111 Highway 73

Moose Lake, Minnesota 55767
Plaintiff, Pro Se