### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERIC MICHAEL SORENSON | ) | 3:16-CV-02029 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MBI, INC., ET AL. | ) | |
| *Defendant*. | ) | JULY 18, 2019 |

### MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge

Plaintiff Eric Michael Sorenson ("Sorenson") commenced this action on December 12, 2016 against two private entities and certain of their employees challenging their billing and debt collection practices. Some counts in the original complaint were dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b). Defendants MBI, Inc., The Danbury Mint, and Jon P. Hobar (collectively, the "Defendants") have moved to dismiss the remaining counts on a variety of bases or, in the alternative, seek summary judgment on the remaining counts. Sorenson in addition to filing an opposition to that motion has filed a "Motion to Strike Exhibits and Affidavit, to Amend Complaint, to Moot Motion to Dismiss and For Summary Judgment, for Transfer of Venue." For ease of reference, the Court refers to this motion as the "Omnibus Motion." How the Court addresses the Omnibus Motion necessarily derives from the Court's adjudication of the Motion to Dismiss. Therefore, all issues joined in these motions are addressed herein, albeit, not necessarily in the order raised and briefed.

1

For the reasons set forth in this decision, the Defendant's Motion to Dismiss is GRANTED and Sorenson's Omnibus Motion is DENIED in part and found as MOOT in part.[1]

**Factual Allegations and Procedural History**

The Danbury Mint ("Danbury Mint") is a private merchant located in Norwalk, Connecticut. (*See* Compl. at ¶ 10.)  Danbury Mint is an operating division of defendant MBI, Inc. ("MBI").  (*See id.* at ¶¶ 30 n.1, 59 n.2; ECF No. 72 at 5.)  Both businesses are located at the same address in Norwalk.  (Compl. at ¶¶ 9–10.)

In 2016, Sorenson purchased a ring from Danbury Mint, which he paid for in full prior to receipt of the ring.  (*Id.* at ¶ 19.)  Shortly after delivering the ring, Danbury Mint started sending Sorenson bills for what it believed to be the outstanding balance due for the ring.  (*Id.* at ¶ 20.)  Sorenson wrote to Danbury Mint to explain that he already paid for the ring in full, but he received no response.  (*Id.* at ¶¶ 24–26.)

On October 19, 2016, Sorenson was sent a "Final Notice" (the "final notice").  (ECF No. 72 at 5; *see also* Compl. at ¶ 30.)  The final notice was on MBI letterhead and stated in relevant part:

> This is our final notice regarding your delinquent Danbury Mint account.  Your account has now been transferred from Customer Service to the Credit and Collections Department of MBI, Inc., of which the Danbury Mint is an operating division.  Our records indicate that your account remains past due for the item(s) referenced on the enclosed statement.  If you do not pay this past due balance within 30 days, we will have no choice but to turn your account over to an outside debt collection agency.

---

[1] Sorenson also filed a "Motion for Rule 56(d) Relief," in which he asked this Court to defer ruling on the Defendants motion for summary judgment until discovery has been completed.  Because the Court grants the Motion to Dismiss, this motion is moot.

(ECF No. 72 at 5.)[2]  The final notice was signed by defendant Jon P. Hobar ("Hobar"), who was identified as a "Manager, Credit and Collections for The Danbury Mint."  (ECF No. 72 at 5; *see also* Compl. at ¶¶ 11, 31.)  After receiving the final notice, Sorenson again wrote to Danbury Mint explaining that he had already paid in full for the ring, but he did not receive a response to that letter from Danbury Mint or MBI.  (*See* Compl. at ¶¶ 27–28.)

On December 12, 2016, Sorenson initiated this action by way of a fifteen-count complaint asserting claims under state and federal statutory law, state and federal constitutional law, and state common law.  The Complaint includes several named and "John Doe" defendants.

On June 2, 2017, Magistrate Judge William I. Garfinkle issued a Recommend Ruling, in which he recommended dismissal of all state and federal constitutional claims as well as "any claims" under the Fair Credit Billing Act, 15 U.S.C. § 1666, *et seq.* ("FCBA") pursuant to 28 U.S.C. § 1915(e)(2)(B).  On June 26, 2017, the Court (*Underhill, C.J.*)[3] approved and adopted the Recommend Ruling in its entirety.  That same day, the Court received Sorenson's objection to the Recommended Ruling.  In response to the objection,[4] the Court issued a clarification order on July 13, 2017.  The Court reiterated that it did not dismiss Sorenson's state law claims that were not premised on a constitutional violation.  The Court further declined to reconsider its earlier

---

[2] In support of their motion to dismiss, the Defendants provided a verified sample of the form letter sent to Sorenson on October 19, 2016.  The Defendants represent that they do not retain copies of the actual letters sent to customers and, therefore, only have samples of their form letters.  In response to that filing, Sorenson objected to the Court's consideration of the form letter and also averred that the sample letter is different from the final notice he received.  A plaintiff cannot evade a potentially meritorious motion to dismiss by choosing not to attach or incorporate by reference a document critical and integral to the complaint.  *See Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001).  Because many of the claims asserted by Sorenson derived from the final notice, the Court determined that it was integral to the Complaint and ordered Sorenson to produce it.  (ECF No. 70); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (noting that a document not expressly included in a complaint can be considered when adjudicating a motion to dismiss if it is "integral" to the complaint, *i.e.*, it is a document "upon which the plaintiff's complaint stands or falls").  On June 10, 2019, Sorenson produced the final notice, which was identical in substance to the form letter submitted by the Defendants.  (*Compare* ECF No. 29-10 at 2 *with* ECF No. 72 at 5.)

[3] This matter was transferred to the undersigned on September 18, 2018.

[4] In light of Sorenson's *pro se* and detention status, the Court considered the objection notwithstanding its untimeliness.

"dismissal of Sorenson's claims brought under the Fair Credit Billing Act." (ECF No. 10 at 2.) As a result of these orders, Counts One through Five, Nine, and Ten of the Complaint were dismissed.

On February 28, 2018, the Defendants moved to dismiss the remaining counts — Counts Six through Eight and Eleven through Fifteen — or, alternatively, sought summary judgment on those counts. On October 15, 2018, Sorenson filed a memorandum in opposition to the Defendants' motion to dismiss. On October 31, 2018, Sorenson further filed the Omnibus Motion in which he sought to strike exhibits attached to the Defendants' motion for summary judgment, to amend his complaint (thereby ostensibly mooting the Defendants' motion to dismiss), and to transfer this matter to Minnesota state court.

**Sorenson's Motion to Transfer Venue (ECF No. 65)**

Sorenson asks this Court to transfer the venue of the action to the Minnesota state court pursuant to 28 U.S.C. § 1404. But Section 1404 does not authorize this Court to transfer a federal matter to a State of Minnesota court. 28 U.S.C. § 1404(a); *see* 17 *Moore's Federal Practice* §§ 111.01, 111.19[1] (Matthew Bender 3d ed.). Instead, it allows for transfer among federal district courts only. 28 U.S.C. § 1404(a). The Motion to Transfer is therefore DENIED.

**The Defendants' Motion to Dismiss (ECF No. 27)**

The Defendants have moved to dismiss the remaining counts in this action. As an initial matter, the parties do not agree which counts remain in this case. It is undisputed that Sorenson's constitutional claims — Counts One through Three, Nine, and Ten — have been dismissed. Citing to the Court's clarification order, Sorenson maintains that only these constitutional claims were dismissed and, therefore, all other counts remain. The Defendants in contrast maintain that Sorenson's claims brought under the FCBA have been dismissed as well.

Sorenson's reading of the Court's clarification order is too narrow.  Therein, the Court did state that "Sorenson's state law claims that are not premised on a violation of the federal or state constitution" remained in the case, but the Court also made clear that it would "not reconsider Judge Garfinkel's recommended dismissal of Sorenson's claims brought under the [FCBA]." (ECF 10 at 2.)  Accordingly, "any claims" brought under the FCBA remained dismissed after the issuance of the Court's clarification order.  (ECF No. 7 at 3.)  Count Three plainly asserts a FCBA violation.  In addition, Counts Four and Five are common law tort claims predicated on FCBA violation.  As such, they are also subject to the Court's earlier dismissal order.[5]  Thus, Counts Six through Eight and Eleven through Fifteen are the only remaining counts in this action.

The Defendants move to dismiss these remaining counts on several grounds.  First, they argue that all claims against Danbury Mint should be dismissed because Danbury Mint lacks legal capacity to be sued, as it is an unincorporated division of MBI.  Second, they argue that the Complaint should be dismissed pursuant to Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure for insufficient process and service of process.  Third, they argue that all of the remaining counts should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Finally, the Defendants argue that if Sorenson's federal statutory claim, asserted in Count Eleven, fails, the Court should decline to exercise supplemental jurisdiction over Sorenson's state law claims and dismiss those counts pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

---

[5] Because the Complaint contains only one count explicitly alleging a violation of the FCBA (*i.e.*, Count Three), the phrase "any claims" in the Recommended Ruling would have been superfluous if the recommended dismissal was of Count Three only, rather than all of the claims that were predicated on an FCBA violation.  Even if a portion of the tort claims asserted in Counts Four and Five remained in the case, however, they would be subject to dismissal for the same reason as the parallel tort claims asserted in Counts Twelve and Thirteen.

The Court does not address all of the Defendants' arguments because the question of whether Sorenson has stated a claim for which relief can be granted is dispositive.  As set forth below, the Complaint is dismissed in its entirety pursuant to Rule 12(b)(6).

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[6]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678.  Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Statutory Claims — Counts Eleven, Seven, and Fifteen**

In Count Eleven, Sorenson asserts a claim against MBI and Hobar for violation of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq*.  In Counts Seven and

---

[6] Sorenson asserts that this Court is not bound by the holding in *Iqbal* because that case is factually distinguishable from the present case.  He is wrong.  The pleading standard under Rule 8 of the Federal Rules of Civil Procedure, as expanded upon by the Supreme Court in *Iqbal*, applies to all civil cases pending in federal court.

Fifteen, Sorenson asserts claims against the Defendants for violation of the Minnesota Collection Agencies Act ("MCAA"), Minn. Stat. § 332.31, *et seq*.[7]  The Court examines each claim in turn.

### FDCPA — Count Eleven

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. . . ." 15 U.S.C. § 1692(e).  The FDCPA distinguishes between creditors and debt collectors.  A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed."  15 U.S.C. § 1692a(4).  As a general rule, a creditor who is collecting or attempting to collect a debt owed or due to it is not a "debt collector."  15 U.S.C. § 1692a(6)(F); *Vincent v. The Money Store*, 736 F.3d 88, 97 (2d Cir. 2013). "Similarly, a creditor's in-house collection division . . . is not considered a debt collector 'so long as [it uses] the creditor's true business name when collecting.'"  *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (quoting S. Rep. No. 95–382 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698).  Here, although he alleges to the contrary; *see infra*; there is no question that MBI and Danbury Mint, the entity from whom the ring was purchased, acted as Sorenson's creditors within the meaning of the FDCPA.

In tacit acknowledgement of this reality, Sorenson relies upon a statutory exception to the rule that the FDCPA does not apply to creditors.  Under the so-called false name exception, a creditor will be deemed a "debt collector" if:

> (1) the creditor is collecting its own debts; (2) the creditor 'uses' a name other than its own; and (3) the creditor's use of that name falsely indicates that a third person is 'collecting or attempting the collect' the debts that the creditor is collecting.

---

[7] In the Complaint, Sorenson mistakenly cited Minnesota Statute § 323.37, which was part of the now-repealed Minnesota Uniform Partnership Act.  The parties agree that this was a typographical error.

*Vincent*, 736 F.3d at 98; *see also* 15 U.S.C. § 1692a(6).  The latter two elements can be established by showing that "(1) the creditor uses a name that falsely implies that a third party is involved in collecting its debts; (2) the creditor pretends to be someone else; or (3) the creditor uses a pseudonym or alias."  *Vincent*, 736 F.3d at 98.

"In evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the 'least sophisticated consumer' would be deceived by the collection practice." *Maguire,* 147 F.3d at 236 (citations omitted).  "This objective standard is designed to protect all consumers, the gullible as well as the shrewd, while at the same time protecting debt collectors from liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* (citations omitted; internal quotations marks omitted).

The question then is whether the final notice satisfies the false-name exception of the FDCPA.  Sorenson contends that this exception applies because he was not required to believe MBI and Hobar's representations about their relationship with Danbury Mint.  Although this may be true, the inquiry here is an objective one, not a subjective one.  Courts looks to the communication itself to assess the applicability of the exception, regardless of the plaintiff's subjective view of the letter.

With respect to Hobar, the individual who signed the letter, the final notice identifies him as a manager in "Credit and Collections *for The Danbury Mint*," not a third party.  (ECF No. 72 at 5 (emphasis added).)  With respect to MBI, the final notice contains both direct and circumstantial evidence of the relationship between Danbury Mint and MBI.  First, it explicitly states in the second sentence that "the Danbury Mint is an operating division of MBI, Inc." (*Id.*)  Second, Danbury Mint and MBI are located at the exact same address, which is entirely consistent with the Danbury Mint being an operating division of MBI.  (Compl. at ¶¶ 9–10, 60.) Third, the final notice

8

states that Sorenson's account would be, at some future date, turned "over to an outside debt collection agency" if he did not pay his outstanding balance within thirty days.  (ECF No. 72 at 5.) In light of the other indicators of the relationship between MBI and Danbury Mint in the letter, this admonishment strongly indicates that MBI is not a third-party debt collector but rather an in-house collection division providing Sorenson with one final chance to pay the balance owed to Danbury Mint before referral to an outside agency.  Lastly, the letter is marked as a "FINAL NOTICE."  If the final notice was really the first correspondence from a third-party debt collector, then it would make little sense for it be labeled as a final notice.

For these reasons, not only would the least sophisticated consumer not be deceived as to who was attempting to collect the debt, but such a consumer would know that the letter was sent by a purported creditor, not a third-party debt collector.

Alternatively, Sorenson argues that he has stated a claim under the FDCPA because he has alleged that the Defendants were engaged in a "flat rating" scheme, which is prohibited by the FDCPA.  As one court aptly explained:

> A 'flat-rater' is one who sells to creditors a set of dunning letters bearing the letter-head of the flat-rater's collection agency and exhorting the debtor to pay the creditor at once.  The creditor sends these letters to his debtors, giving the impression that a third party debt collector is collecting the debt.  In fact, however, the flat-rater is not in the business of debt collection, but merely sells dunning letters.  [The FDCPA] prohibits the practice of flat-rating because of its inherently deceptive nature.

*Rumpler v. Phillips & Cohen Assocs., Ltd.*, 219 F. Supp. 2d 251, 260 (E.D.N.Y. 2002) (quoting *Franceschi v. Mautner–Glick Corp.*, 22 F. Supp. 2d 250, 256 (S.D.N.Y.1998)).  Sorenson's argument that he pleaded a plausible flat-rate scheme fails because the Complaint does not contain any reference to a flat rate scheme, let alone any factual allegations to support such a theory of liability.

Sorenson next argues that he has stated a claim under the FDCPA because he alleged that MBI and Hobar are "debt collectors" and this allegation must be accepted as true. Sorenson is mistaken. The allegation that MBI and Hobar are "debt collectors" is a legal conclusion, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. As discussed above, there is no question that MBI and Hobar were not, in fact, debt collectors within the meaning of the FDCPA and there are no factual allegations in the complaint to support a contrary inference. Indeed, Sorenson all but conceded the question when he relied upon the false name exception in the FDCPA to bring them (as creditors) within the scope of the FDCPA.

Finally, Sorenson contends that he pleaded that Danbury Mint and MBI were not the same entity and that allegation must be accepted as true as well. But the Complaint itself does not support this assertion. Sorenson alleges in the Complaint that "it appears that MBI may be affiliated with [Danbury Mint] and may be the same company"; (Compl. at ¶ 30 n.1); and that MBI identified Danbury Mint as "an operating division of MBI, Inc." in the final notice; (*id.* at 59 n.2). Sorenson also alleges that Danbury Mint and MBI are located at the exact same address in Connecticut, which reinforces the relationship between the two entities. (*Id.* at ¶¶ 9–10.) In light of these allegations, the inference advanced by Sorenson — that Danbury Mint and MBI are unrelated entities — is not a reasonable one.

In sum, neither MBI nor Hobar qualify as "debt collectors" under the circumstances alleged here. Accordingly, the FDCPA does not apply to them and Count Eleven is dismissed with prejudice.

### The MCAA — Counts Seven and Fifteen

The MCAA closely parallels the FDCPA in structure and purpose.  As is the case with the FDCPA, the MCAA excludes businesses collecting their own debts, *i.e.*, creditors, from its definition of "collection agency."  *See* Minn. Stat. § 332.31(3) (defining "collection agency" as "persons engaged in the business of collection *for others*" [emphasis added]).  Also, like the FDCPA, the MCAA contains a false name exception which would bring a creditor within the scope of the statute.  Minn. Stat. § 332.38 (stating that the MCAA applies to "any person who . . . uses a fictitious name or any name other than the person's own name which would indicate to the debtor that a third person is collecting or attempting to collect such account or claim").

Research has disclosed no case law exploring the contours of the false name exception in the MCAA.[8]  However, "Minnesota has statutorily adopted these FDCPA requirements for debt collection activities occurring in Minnesota."  *Randall v. Paul*, 897 N.W.2d 842, 846 (Minn. Ct. App. 2017); *see also* Minn. Stat. § 332.37(12).  Additionally, in other areas of the law where Minnesota law mirrors or is modeled after federal law, Minnesota courts seek guidance and instruction from the federal courts when interpreting Minnesota statutes.  *Williams v. State*, 910 N.W.2d 736, 742 (Minn. 2018) ("When a Minnesota rule is modeled after a federal rule, federal cases are instructive in the interpretation of the corresponding Minnesota rule."); *e.g., Kolton v. County of Anoka*, 645 N.W.2d 403, 407 (Minn. 2002) ("In the past, we have found interpretations

---

[8] This is likely so because courts in Minnesota have held that the MCAA does not provide a private right of action.  *Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030, 1037 (D. Minn. 2010) ("[N]o private right of action exists under the Minnesota Collection Agencies Act."); *see also Edwards v. Fin. Recovery Servs. (FRS) Inc.*, No. 18-cv-1066 (NEB) (DTS), 2019 WL 2029489, at *2 (D. Minn. Jan. 31, 2019), *report and recommendation adopted* 2019 WL 1125602 (D. Minn. Mar. 11, 2019).  Instead, the MCAA authorizes civil enforcement through only the attorney general or a county attorney.  Minn. Stat. § 332.39 (authorizing attorney general and county attorney to apply for injunction for violations of MCAA).  Because neither party has raised this issue, the Court assumes without deciding that Sorenson can bring suit under the MCAA.

of federal anti-discrimination statutes useful to guide our interpretation of the [Minnesota Human Rights Act] when the . . . provisions in question are similar to provisions of the federal statutes.").

Accordingly, the analysis set forth above with respect to the FDCPA renders the same result under the MCAA and Counts Seven and Fifteen are dismissed with prejudice.

**Common Law Tort Claims – Counts Six, Eight, Twelve, Thirteen, and Fourteen**

Sorenson asserts claims against Danbury Mint for negligent infliction of emotional distress ("NIED") (Count Six) and slander (Count Eight) and claims against MBI and Hobar for negligence (Count Twelve), intentional infliction of emotional distress ("IIED") (Count Thirteen), and NIED (Count Fourteen).  The parties dispute which state's law should be applied to these claims and whether they are adequately pleaded.

Beginning with the choice of law issue, Sorenson contends that Minnesota law governs his tort claims, while the Defendants contend that Connecticut law governs these claims.  "[I]t is well settled that a federal court must look to the choice of law rules of the forum state." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998).  "The threshold choice of law issue in Connecticut, as it is elsewhere, is whether there is an outcome determinative conflict between applicable laws of the states with a potential interest in the case.  If not, there is no need to perform a choice of law analysis, and the law common to the jurisdiction should be applied." *Cohen v. Roll-A-Cover, LLC*, 131 Conn. App. 443, 465–66 (2011) (quoting *Burns v. Quinnipiac Univ.*, 120 Conn. App. 311, 320 (2010)).  Here, the Court does not need to resolve the choice of law issue because whether the substantive law of Connecticut or Minnesota applies to Sorenson's common law tort claims does not change the outcome of this case.

***Emotional Distress Claims — Counts Six, Thirteen, and Fourteen***

In Counts Six and Fourteen, Sorensen asserts NIED claims based on the Defendants' use of unfair billings practices.  These claims plainly fail because Sorenson has not alleged any factual allegations that give rise to a plausible NIED claim under Connecticut or Minnesota law.  *See Hall v. Bergman*, 296 Conn. 169, 183 n.8 (2010) ("To prevail on a claim of negligent infliction of distress, the plaintiff is required to prove that '(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress.'") (quoting *Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 444 (2003)); *Stead-Bowers v. Langley*, 636 N.W.2d 334, 343 (Minn. Ct. App. 2001) ("To establish a claim for negligent infliction of emotional distress, a plaintiff must ordinarily show she (1) was within a zone of danger of physical impact; (2) reasonably feared for her own safety; and (3) suffered severe emotional distress with attendant physical manifestations.").  Instead, Sorenson merely alleges that the Defendants conduct caused him "severe emotional distress" and that their "acts and omissions . . . constitute a violation of the tort of [NIED]."  (Compl. at ¶¶ 22, 132, 192).  These types of conclusory allegations are insufficient to defeat a motion to dismiss.  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss" [alterations omitted; internal quotation marks omitted]); *see, e.g., Hanly v. Powell Goldstein, L.L.P.*, 290 Fed. Appx. 435, 441 (2d Cir. 2008) (summary order) (holding that plaintiffs' allegations that defendants intended to cause "severe emotional distress" were insufficient to state a claim for IIED under New York law, which is identical to Connecticut law); *Allen v. Verizon Wireless*, No. 3:12-cv-00482 (JCH), 2013 WL

2467923, at *6 (D. Conn. June 6, 2013) (same; Connecticut law).  Accordingly, Counts Six and Fourteen are dismissed.

Sorenson's IIED claim, asserted in Count Thirteen, suffers from the same deficiencies, as Sorenson has not asserted any factual allegations that give rise to a plausible IIED claim under Connecticut or Minnesota law.  *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (stating that to recover for intentional infliction of emotional distress "[i]t must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."  [internal quotation marks omitted]); *Schimming v. Equity Servs. of St. Paul, Inc.*, No. A11-1573, 2012 WL 1380395, at *4 (Minn. Ct. App. Apr. 23, 2012) ("To recover for intentional infliction of emotional distress, a plaintiff must show: (1) that the conduct is extreme and outrageous, (2) that it is intentional or reckless, (3) that it causes emotional distress, and (4) that the distress is severe.") (citing *Hubbard v. United Press Int'l,* 330 N.W.2d 428, 438–39 (Minn. 1983)).  Again, Sorenson's allegations are entirely conclusory.

Under the circumstances presented here, the Court further concludes that it is appropriate to dismiss the emotional distress claims with prejudice.  Under either Connecticut or Minnesota law, the standard for asserting any type of emotional distress claim is exacting.  *Appleton*, 254 Conn. at 210 ("Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society" [internal quotation marks omitted]); *Carrol*, 262 Conn. at 444 (noting that liability for NIED requires the emotional distress to be "severe enough that it might result in illness or bodily harm"); *Langeslag v. KYMN Inc.*, 664

14

N.W.2d 860, 866 (Minn. 2003) ("To prevent fictitious and speculative claims we limit this tort [*i.e.*, IIED] 'to cases involving particularly egregious facts.'"); *Schimming*, 2012 WL 1380395, at *3 (discussing requirements for stating NIED claim).[9]

With respect to the IIED claim, construed liberally and in Sorenson's favor, the facts alleged, as a matter of law, do not establish that the Defendants conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton*, 254 Conn. at 211; *accord* Hubbard, 330 N.W.2d at 439. This action arises out of a consumer transaction in which a dispute arose as to whether Sorenson owed the defendant $71.00. Even if the final notice was incorrect, misguided or even sent by the Defendants knowing that it was incorrect, the conduct does not and cannot meet the exacting threshold requirements for an IIED claim.

Similarly, the Court cannot envision a scenario in which the sending of an inaccurate collection letter seeking payment of a $71.00 balance could ever form the basis for a NIED claim. The underlying conduct may well be annoying, aggravating, irritating, and even concerning. It was not, however, of such a nature that it "created an unreasonable risk of causing" emotional distress or that the distress it might foreseeably cause (if any) "was severe enough that it might result in illness or bodily harm." *Carrol*, 262 Conn. at 444.

Accordingly, the problems associated with Sorenson's emotional distress claims are substantive in nature and more precise or additional pleading cannot cure the deficiencies identified. Counts Six, Thirteen, and Fourteen are appropriately dismissed with prejudice. *See*

---

[9] The Court notes that the burden for providing an NIED claim in Minnesota is higher than in Connecticut, as Minnesota generally requires plaintiffs to prove they were "within a zone of danger of physical impact" to establish liability, among other things. *Schimming*, 2012 WL 1380395, at *3. An exception to the zone-of-danger rule exists only in limited circumstances and the "plaintiff must show physical manifestations of the distress to prove the genuineness and gravity of the emotional suffering." *Id.* (internal quotation marks omitted). Here, Sorenson asserts no such claim.

*Danis v. Moody's Corp.*, 627 Fed. Appx. 31, 32 (2d Cir. 2016) (summary order) (affirming dismissal with prejudice of complaint against defendant due to futility); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.").

### Slander — Count Eight

In Count Eight, Sorenson asserts a claim for slander against Danbury Mint.  Sorenson does not dispute that he has not alleged that the Danbury Mint orally defamed him and, therefore, this claim necessarily fails.  *Silano v. Cooney*, 189 Conn. App. 235, 241 (2019) ("slander is oral defamation"); *Schimming*, 2012 WL 1380395, at *4 n.2 ("Oral defamation is slander").  Instead, Sorenson proposes amending his complaint to include the broader tort of defamation.  His plan is unavailing.

Under Connecticut or Minnesota law, to establish a prima facie case of defamation, a plaintiff must establish, among other things, that the defendant published defamatory statements about him to a third person.  *Silano*, 189 Conn. App. at 241 ("To establish a prima facie case of defamation at common law, the plaintiff must prove that (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement."); *Schimming*, 2012 WL 1380395, at *4 ("To establish defamation, a plaintiff must prove that a statement: (1) was false, (2) was communicated to someone else, and (3) tended to harm the plaintiff's reputation.").  Neither Sorenson's Complaint nor his proposed amended complaint, however, allege that Danbury Mint published any defamatory statements about him.  Instead, Sorenson alleges that *if* Danbury Mint had referred his purported debt to a

third party debt collection agency, as it threatened, such a referral "would make [him] look in the eyes of a third party as a 'dead-beat debtor' and thus be red-flagged." (Compl. at ¶ 65.) Sorenson's concerns about what *might* happen *if* Danbury Mint were to refer his alleged debt to a debt collection agency are not actionable as defamation.[10]   Thus, Sorenson's proposed amendment would be futile and Count Eight is dismissed with prejudice.

### Negligence — Count Twelve

In Count Twelve, Sorenson asserts a claim for negligence against MBI and Hobar based on their violation of the FDCPA.  As previously explained, Sorenson has failed to allege a plausible violation of the FDCPA, and therefore Count Twelve is dismissed with prejudice as well.

### Claims Against the John Doe Defendants

Lastly, the Defendants have moved to dismiss all counts against the non-appearing John Doe defendants, all of whom are unnamed officers or employees of Danbury Mint or MBI. Ordinarily, one defendant cannot seek to dismiss counts against another defendant.  *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576, 580 (S.D.N.Y. 2002), *aff'd sub nom. First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004).  But this rule is not absolute.  District courts may dismiss claims for failure to state a claim upon motion or *sua sponte* when the plaintiff has had notice and an opportunity to oppose dismissal.  *First Capital Asset Mgmt., Inc.*, 219 F. Supp. 2d at 580 ("a district court may dismiss claims *sua sponte* for failure to state a claim, at least so long as the plaintiff had notice and an opportunity to be heard on the issue"); *Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund v. Canny*, 876 F. Supp. 14, 17 (N.D.N.Y. 1995) (dismissing complaint against moving and non-moving defendants

---

[10] Such a claim would also also implicate ripeness concerns and, thereby, the subject matter jurisdiction of this Court.  *See generally Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687–92 (2d Cir. 2013) (discussing ripeness doctrine and the impact of lack of ripeness on subject matter jurisdiction).

"because all of the defendants are similarly situated and moreover, because the plaintiff had ample notice and opportunity to oppose the instant motion to dismiss"); Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").

Here, Sorenson does not assert any standalone claims against the John Doe defendants. Instead, in each of the counts against the named Defendants, he asserts identical claims against various classes of John Doe defendants.  This parity, combined with the fact that the Defendants' expressly sought to dismiss the Complaint against the John Doe defendants, leads the Court to conclude that Sorenson had both notice and an opportunity to oppose dismissal of the claims against the John Doe defendants. And although he had such an opportunity, Sorenson raised no separate and distinct argument in his opposition regarding the claims against these defendants. The Court therefore concludes that dismissal of these claims is warranted because they suffer from the same deficiencies as those asserted against the Defendants as set forth above.

**Sorenson's Motion to Amend the Complaint (ECF No. 65)**

In an effort to moot the Motion to Dismiss, Sorenson seeks to amend the complaint.  The proposed amended complaint, in relevant part, removes the constitutional claims and related allegations and adds a new cause of action for unfair debt collections under Connecticut law.

A plaintiff may amend his complaint once as a matter of right within twenty-one days after service of the complaint or, if a responsive pleading is required, within twenty-one days after service of the responsive pleading.  Fed. R. Civ. P. 15(a); *Blaine v. UConn Health Care*, No. 3:18-cv-00359 (MPS), 2018 WL 3448165, at *1 (D. Conn. July 17, 2018).   In all other cases, the plaintiff may amend his complaint only with the Court's leave.  Fed. R. Civ. P. 15(a)(2).  Generally,

leave to amend should be "freely give[n]."  Fed. R. Civ. P. 15(a)(2); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).  The court plainly has discretion, however, to deny leave to amend upon a finding of futility.  *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 383 (D. Conn. 2008).  An amendment would be futile if "a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002).

Here, Sorenson has moved to amend his complaint for the first time almost three years after initiating this action and eight months after the Defendants moved to dismiss the Complaint. Consequently, Sorenson may amend his complaint only with the Court's leave.  Sorenson seeks to amend the complaint as a means of rendering moot the motion to dismiss. The Defendants argue that Sorenson's proposed amended complaint should be rejected as it would be futile. Each argument raises the same question — whether the amended complaint would still be subject to dismissal on the grounds alleged in the instant motion to dismiss.

With respect to Sorenson's statutory and common law tort claims that are the subject of this decision, the proposed amended complaint does not make any substantive changes to these claims.  Accordingly, each of these counts would be subject to dismissal for the identical reasons identified in this decision.

The proposed amended complaint does add a new cause of action, a claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq*.[11]  Similar to Sorenson's other claims, the proposed CUTPA claim lacks sufficient factual allegations to state a plausible CUTPA violation.  To state a claim under CUTPA, a plaintiff must plead, among other things, that he suffered an ascertainable loss of money or property as a result of the defendant's

---

[11] This new count is titled as a claim for violation of the "Connecticut Unfair Debt Collections Act," which does not exist, but, in the body of the count, Sorenson asserts that the Defendants conduct violates CUTPA.

acts or practices. *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 100 (D. Conn. 2016) ("To

state a claim under CUTPA, a plaintiff must plead that she (1) suffered an ascertainable loss of

money or property, (2) that was caused by, (3) an unfair method of competition or an unfair or

deceptive act in the conduct of any trade or commerce."), *aff'd*, 666 Fed. Appx. 84 (2d Cir. 2016)

(summary order). Here, although Sorenson has alleged generically that he suffered "damages" as

a result of the Defendants' conduct, his factual allegations do not establish that he suffered any

kind of ascertainable, or measurable, loss as a result of the Defendants allegedly unfair billings

practices. *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 218 (2008) ("An

'ascertainable loss' is a loss that is 'capable of being discovered, observed or established.'"). As

previously explained, to survive a motion to dismiss a claim must contain enough factual

allegations to support a plausible right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Sorenson's proposed CUTPA claim is deficient

in this respect and would be subject to dismissal under Rule 12(b)(6).[12]

  For all of these reasons, the Motion to Amend the Complaint is DENIED.

---

[12] Even if the Court were to allow Sorenson to replead his CUTPA claim, the Court would likely lack subject matter jurisdiction over it. The Court's subject matter jurisdiction over this claim would have to be based upon diversity jurisdiction. "Congress has limited diversity jurisdiction to cases involving an amount in controversy of more than $75,000." *Wright v. Musanti*, 887 F.3d 577, 584 (2d Cir. 2018) (citing 28 U.S.C. § 1332(a)). "[A] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996) (citation omitted); *see also Benning v. Corp. of Marlboro Coll.*, No. 2:14-cv-00071, 2014 WL 3844217, at *3 (D. Vt. Aug. 5, 2014) ("The Court must dismiss a suit if it is clear to a legal certainty that the plaintiff will not recover more than the statutory minimum."); *e.g.*, *Price v. PetSmart, Inc.*, 148 F. Supp. 3d 198, 201 (D. Conn. 2015) (remanding suit where the facts pleaded did not plausibly establish that plaintiff's damages as a result of her contraction of ringworm exceeded $75,000 where there were no allegations plaintiff had any medical complications as a result of infection). Even construing the allegations in the Complaint in a light most favorable to Sorenson, the Court cannot conceive that the amount in controversy could ever plausibly exceed $75,000 — even with CUTPA's authorization of punitive damages. Conn. Gen. Stat. § 42-110g(a); *see also Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 125–27 (2d Cir. 2004) (discussing constitutional limits of punitive damage awards in context of CUTPA claim).

**Conclusion**

The Defendants' Motion to Dismiss [ECF No. 27] is GRANTED.  Sorenson's Omnibus Motion [ECF No. 65] is DENIED insofar as it seeks to transfer venue or amend the complaint. The Omnibus Motion [ECF No. 65] to the extent it challenges the Defendant's motion for summary judgment and Sorenson's Motion for Rule 56(d) Relief [ECF No. 43] are found as MOOT.  The Clerk of Court is directed to close this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of July 2019.

 */s/ Kari A. Dooley*                    
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

21